IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK24-40267 |
| | ) | |
| ALDEN H. ZUHLKE and LISA A. ZUHLKE, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| PHILIP M. KELLY, Chapter 7 trustee, | ) | Case No. AP 25-4007 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARIN A. ZUHLKE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Findings and Conclusions Regarding Order Granting in Part and Denying in Part Motion for Leave to File Amended Complaint**

The Chapter 7 trustee, through his counsel Richard P. Garden, Jr., filed a motion for leave to file an amended complaint. (Doc. #77). Defendants Darin Zuhlke, Rachel Zuhlke, and Zuhlke Properties, LLC, through their counsel, Lauren R. Goodman, resisted. (Doc. #89). The motion was filed over four months after the deadline for amending pleadings under the court's scheduling order, so the trustee must show good cause under Rule 16(b). He proposes adding a preference claim. But the only new fact he identifies supports a preference claim below the statutory floor of 11 U.S.C. § 547(c)(9). Other proposed new claims rest on documents and facts he had before the deadline. Because the trustee has not shown good cause for most of the new claims, and the one claim resting on a new fact is futile, leave to add claims is denied. Leave is granted to drop claims the trustee abandoned.

## Findings of Fact

The debtors, Alden and Lisa Zuhlke, farmed in Antelope County, Nebraska. In August 2015, Rabo AgriFinance, LLC, extended them a $4,000,000 line of credit. (Doc. #1, ¶ 25). The line matured unpaid on February 1, 2020. Rabo

obtained a deficiency judgment of $3,267,588.59. (Doc. #1, ¶¶ 27, 36). The debtors filed their bankruptcy case as a Chapter 12 case on March 27, 2024. The case was converted to Chapter 7 on June 25, 2024. Philip M. Kelly is the Chapter 7 trustee. (Doc. #1, ¶¶ 2–3).

On December 12, 2016, the debtors' son, Darin Zuhlke, signed a $190,000 promissory note payable to the debtors. (Doc. #79). The loan financed Darin's purchase of a farm near Foster from the debtors. (Doc. #78, 44:16-45:16). The note carries interest at 2.18% and calls for 240 monthly payments of $400. It also contains this sentence:

> Payee gives a present gift, effective at the time this Promissory Note is executed, of $580.00 per month for 240 months.

(Doc. #79, at 1). The attached amortization schedule lists a $580 "gift" each month beside a declining principal balance. (Doc. #79, at 2-7).[1]

The trustee filed this adversary proceeding on May 28, 2025, against Darin, his wife Rachel, Zuhlke Properties, LLC, and several other defendants. (Doc. #1). The complaint contains eight causes of action under 11 U.S.C. §§ 542(b), 544(b), and 550. The fifth cause of action seeks turnover of amounts due and owing on four promissory notes, including the $190,000 note. The complaint describes the $190,000 note by its date, principal amount, interest rate, first payment date, and monthly installment. (Doc. #1, ¶ 106). It says nothing about the gift clause.

The second cause of action alleges Joysprings Properties, LLC, an entity the debtors formed in December 2021, sent Darin and Rachel $100,000 on April 13, 2022, and the debtors made "at least seventeen" monthly transfers of $674.72 from the Joysprings account. (Doc. #1, ¶¶ 8, 70-72). The complaint treats the $100,000 as part of "Excess Proceeds" from the closing of the debtors' sale of farmland to another of their sons. Specifically, "[t]he closing produced excess proceeds of $102,147.89," and Darin and Rachel "are the immediate transferees of the first transferee of the Excess Proceeds." (Doc.

---

[1] No cash moves under the gift clause. The gift is a monthly credit against the debt. A level payment amortizing $190,000 at 2.18% over 240 months is $977.46 a month, which roughly equals Darin's $400 payment plus the $580 gift.

#1, ¶¶ 60-62, 73). The prayer seeks avoidance and recovery under §§ 544(b) and 550(a). (Doc. #1, at 12).[2]

On March 7, 2026, the trustee's counsel asked defense counsel for dates for the depositions of Darin and Rachel. (Doc. #90, ¶ 2). He renewed the request on April 8. (Doc. #90, ¶ 3). Defense counsel responded on April 9: Rachel could not take time off until after May 31; counsel thought both could be deposed on June 4-5. (Doc. #90, ¶ 4).

Two weeks later, on April 24, 2026, the parties filed their Rule 26(f) report. (Doc. #49). They were instructed to use the court's local form. (Doc. #46; Local Rule 7026-1). On the local form, the parties choose from the following statements regarding amendments:

> ☐ No party anticipates a need to amend pleadings or add parties.
>
> ☐ A plaintiff anticipates a need to amend pleadings or add parties and will file a motion to amend by [date].
>
> ☐ A defendant anticipates a need to amend pleadings or add parties and will file a motion to amend by [date].
>
> If more than 60 days are needed, explain why: ____________.

Local Form NEB 7026-1(A) ¶ 6. In their 26(f) report, the parties deleted the check boxes and stated:

> The Darin Zuhlke Defendants anticipate a need to amend pleadings or add parties and will file a motion to amend by May 1, 2026. Plaintiff objects to this delay.

(Doc. #49, § 6). The trustee stated no need to amend. He also opposed, as delay, the defendants' request for a July 15 written discovery deadline, reporting "Plaintiff has completed its written discovery." (Doc. #49, § 7). The trustee stated he had asked for deposition dates and "no firm dates have been proposed." (Doc. #49, § 13). The 26(f) report set August 15, 2026, for summary

---

[2] Joysprings and Christian Zuhlke did not file an answer. On July 18, 2025, default judgment was entered against them avoiding the transactions described in the first and third causes of action, including the deposit of $102,147.89 in farm-sale proceeds into the Joysprings account. (Doc. #27).

judgment motions and September 30, 2026, as the trial-ready date. (Doc. #49, §§ 12, 14).

The parties summarized their claims in the 26(f) report. The trustee described the second cause of action as a claim under Neb. Rev. Stat. §§ 36-805(a) and 36-806(a) reaching both the $100,000 transfer and the $674.72 monthly transfers. (Doc. #49, § 2.B). The defendants described the monthly payments as made "in exchange for use of a vehicle that Darin Zuhlke owns." (Doc. #49, § 2.C). The court approved the report by text order on May 22, 2026. (Doc. #60).

Darin's deposition was set for June 8, 2026. It was postponed until June 26 because Darin had not produced all the documents the trustee requested. (Doc. #90, ¶¶ 6–7). The trustee's counsel took the deposition on June 26. (Doc. #78). When asked about the gift clause, Darin rejected the label. He described it as:

> an agreement or settlement. My dad owed me money. And then he acknowledged that he owed me money. And to settle the case, he -- they wanted it to be labeled as a gift on there.

(Doc. #78, 46:2-11). Darin did not know how much his father owed him. Neither kept good records. (Doc. #78, 46:12-20). The trustee's counsel summarized Darin's testimony as "the gift component is really recovering what your dad owed you." Darin answered, "Exactly, yes." (Doc. #78, 47:14-17). The trustee's counsel responded, "I've been mystified about the gift component of this, so it's nice to know now." (*Id.*, 47:18-19).

During the deposition, Darin also testified about a 2020 Ram pickup he bought and financed in his own name and later let his parents use under an oral "rent-to-own" arrangement. Joysprings paid him a $10,400 down payment, and his parents paid him $674.72 each month, which he then paid the lender. (Doc. #78, 62:15–66:12).

The trustee received the deposition transcript on or about August 1, 2026. (Doc. #90, ¶ 8). On August 12, the trustee served interrogatory answers disclosing the following theory:

> The Plaintiff seeks to avoid the "gift" to Darin Zuhlke under that promissory note dated December 12, 2016, in the original principal amount of $190,000.00 (the ["]$190,000 Note") as the "gift" was a pre-petition settlement of a dispute between Darin Zuhlke and Alden

> Zuhlke that is being paid by the Debtor to Darin Zuhlke in monthly installments.

(Doc. #90, ¶ 12).

The summary judgment deadline was extended twice. The second extension came on a joint motion filed on September 14, 2026. (Doc. #73). The motion said nothing about an amendment. Four days later, on September 18, the trustee filed a motion seeking leave to amend. (Doc. #75). He filed an amended motion on September 22. (Doc. #77).[3]

In his motion to amend, the trustee states the deposition revealed facts supporting "an additional cause of action designated as the Fifth Cause of Action," and the purpose of the amendment is "to maximize the recovery by the estate." (Doc. #77, ¶¶ 1–2).

The proposed amended complaint does considerably more:

- It adds a new fifth cause of action alleging the $580 gifts were the settlement of a dispute. It seeks avoidance of the gifts made within one year before the petition as insider preferences under 11 U.S.C. § 547, and avoidance of the gifts made after the petition under 11 U.S.C. § 549. (Doc. #77, Ex. A ¶¶ 94–99).

- It expands the monthly transfer claim, now the fourth cause of action. It increases the count from at least 17 transfers to at least 32, adds a $10,400 transfer on October 28, 2022, and a $6,674.72 transfer on December 30, 2022, alleges unidentified "additional Monthly Transfers" from other accounts, and adds a § 549 theory for post-petition transfers. (Doc. #77, Ex. A ¶¶ 83–93).

- It restates the second cause of action as a claim for recovery of the $100,000 from Darin and Rachel as immediate transferees under 11 U.S.C. § 550(a)(2). (Doc. #77, Ex. A ¶¶ 71-75).

- It drops the original fourth, seventh, and eighth causes of action, the $60,000 note, and every claim against Zuhlke Properties. (*Compare* Doc. #1 *with* Doc. #77, Ex. A; *see* Doc. #87-1).

---

[3] No summary judgment motion is pending. The summary judgment deadline is currently extended until the court rules on the present motion.

The trustee's brief relies on Rule 15(a). (Doc. #81, at 2-3). The defendants resist under Rule 16(b). Alternatively, they argue the new claims are futile and prejudicial under Rule 15(a).[4] (Doc. #89). In his reply, the trustee argues the 26(f) report "is silent on any deadline for the Trustee to amend."[5] (Doc. #92, at 1). The trustee offered to "modify the Rule 26(f) Report and the Order entered thereon." (Doc. #81, at 3).

## Conclusions of Law

### *Rule 16(b) Governs*

Rule 15(a) governs amendment of pleadings. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015. Rule 16(b) governs scheduling orders. A scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions," and it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(3)(A), (4); Fed. R. Bankr. P. 7016; *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

The interplay between the rules is settled. "If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Sherman*, 532 F.3d at 716 (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). Applying Rule 16(b)'s good-cause standard in this setting "is not optional." *Id.* Considering a late motion under Rule 15(a) alone "would render scheduling orders meaningless." *Id.* (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)); *see also Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024); *Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1034 (8th Cir. 2017).

The trustee argues the scheduling order set no deadline for him because the report "is silent." The report was not silent. The court's form asks whether a plaintiff anticipates a need to amend and, if so, requires a date. The form gave the trustee a box. The filed report omits it. The trustee also objected to the defendants' amendment date as delay. A party who declines the form's

---

[4] The defendants also rely on Rabo's 2024 state-court complaint, filed by the trustee's counsel on Rabo's behalf, which lists all four notes. The court does not rely on it. The trustee's own complaint pleaded the $190,000 note in May 2025.

[5] The reply's argument appears only on its first page. Its second and third pages begin mid-sentence and repeat the trustee's opening brief nearly word for word. Nothing in the reply answers the defendants' futility arguments.

offer of additional time, while opposing the other party's request for the same thing, has represented he does not need it.[6] The approved report set the time for amending the pleadings, as Rule 16(b)(3)(A) requires. Its last date for any party's amendment was May 1, 2026.

Case management orders built on the parties' joint submissions are enforced as written. *See Bradford v. DANA Corp.*, 249 F.3d 807, 808-09 (8th Cir. 2001). "As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them." *Id.* at 809. A court's construction of its own scheduling order receives deference. *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 947 (8th Cir. 2012). In *Hartis*, the plaintiffs argued an amendment deadline in a scheduling order entered for class certification briefing did not reach their later motion adding a punitive damages claim. The district court read its order as covering all motions to amend, and the Eighth Circuit deferred. *Id.* at 943, 947. The trustee's position is weaker than the *Hartis* plaintiffs'. The *Hartis* plaintiffs relied on language in the order supporting a narrower reading. The trustee relies on an omission of his own making.[7]

Rule 16(b) governs for a second, independent reason: the trustee's own filings ask for a new schedule. The motion was filed after the original summary judgment deadline and less than two weeks before the approved trial-ready date. He concedes a grant would require a new schedule. He states he is "willing to modify the Rule 26(f) Report and the Order entered thereon." A request for a new schedule is a request under Rule 16(b)(4), regardless of the label the motion carries. *See Bradford*, 249 F.3d at 809 (applying the good-cause standard on a request for more discovery time and a later trial date).

*The Good-Cause Standard*

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716-17 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). The nonmoving party's prejudice may also matter, but courts "generally . . . will not consider

---

[6] Alternatively, if the trustee's argument is accepted, the parties, including the trustee, violated the directive to use the court's local form.

[7] The trustee's Rule 15(a) authorities hold that delay alone, without prejudice, does not justify denying leave. The *Hartis* plaintiffs made the same argument. The Eighth Circuit affirmed denial under Rule 16(b) without a prejudice finding. *Hartis*, 694 F.3d at 946–49.

prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Id.* at 717; *Hartis*, 694 F.3d at 948. A court may find good cause lacking where "no change in the law, no newly discovered facts, or any other changed circumstance made the [claim] more viable after the scheduling deadline." *Sherman*, 532 F.3d at 718; *Midwest Med.*, 95 F.4th at 607. New facts from a deposition do not help when the new claims are "legal variations on a theme the parties had been litigating for years." *Kmak*, 873 F.3d at 1034. And a party's own pleading choices are not a changed circumstance. *Midwest Med.*, 95 F.4th at 607–08.

*The Proposed Gift Claims*

The note itself calls the credit "a present gift." But it gives $580 "per month for 240 months," which is a stream of future forgiveness. Read alone, the clause looks like the debtors' gratuitous promise of partial forgiveness on each future installment.[8] On Darin's account, the credits repaid a debt his father owed him and were a term of the 2016 bargain rather than a promise of future gifts. The court need not decide which characterization is correct. Neither characterization helps the trustee. The gratuitous reading supplies no antecedent debt for § 547, and the settlement reading falls below § 547(c)(9).

*The § 549 Gift Claim Was Known to the Trustee*

The trustee characterizes the post-petition monthly debt forgiveness as an avoidable post-petition transfer. The trustee may avoid a transfer of property of the estate occurring after the commencement of the case and not authorized under the Bankruptcy Code or by the court. 11 U.S.C. § 549(a). The claim does not depend on why the debtors made the gift. It requires a transfer of estate property, after the petition, without authorization. Darin's

---

[8] The note calls the clause a present gift of $580 a month for 240 months. The credits total $138,620, far above the annual gift-tax exclusion. A year's credits total $6,960, well under it. The debtors may have treated each year's credits as a separate gift. The record does not show how they reported them. A completed gift requires donative intent, delivery, and acceptance. *Zelenka v. Pratte*, 912 N.W.2d 723, 728-29 (Neb. 2018). "Long ago, this court recognized that a promise to make a gift in the future is ordinarily unenforceable, even when put in the form of a promissory note." *Shadow Ridge Ltd. P'ship v. Ryan (In re Est. of Ryan)*, 925 N.W.2d 336, 341 (Neb. 2019) (citing *Ricketts v. Scothorn*, 77 N.W. 365, 366-67 (Neb. 1898)). Under *Ricketts*, a promise of this kind becomes enforceable only with consideration or when the promisee detrimentally relies on it.

testimony changed none of these elements, so it did not make the claim "more viable after the scheduling deadline." *Sherman*, 532 F.3d at 718. Darin testified the "gift" was settlement of a debt. An antecedent debt is not an element of a claim under § 549.

Every fact needed for the claim was in the trustee's hands before the deadline. The trustee knew of the clause before Darin's deposition. The gift clause itself sits on the first page of the $190,000 note. The trustee pleaded the note, and its date, amount, rate, first payment date, and installment, in his original complaint, eleven months before the May 1, 2026, deadline. The petition date, and the date of each post-petition credit, were never in doubt. In May 2025, nothing prevented the trustee from alleging each post-petition $580 credit against the note was an unauthorized transfer of estate property.

The trustee's choices before the deadline confirm the point. He left the gift clause unchallenged when he pleaded the note in May 2025. A party's own pleading decision is not a changed circumstance. *Midwest Med.*, 95 F.4th at 607. In April 2026, the trustee also knew the depositions of Darin and Rachel were not scheduled. Yet he reserved no time for amendment. And he called the defendants' request for amendment time "delay." A § 549 claim against post-petition credits under a note already in the case is a legal variation on a theme the parties have litigated since the complaint was filed. *See Kmak*, 873 F.3d at 1034.

The trustee's pace after the deposition does not change the result. His counsel examined Darin and heard the answer on June 26. The trustee had the transcript by about August 1 and had formed his theory by August 12. The schedule then called for summary judgment motions by August 15 and a trial-ready case by September 30. Twice the trustee joined motions extending the summary judgment deadline for other reasons. Neither mentioned an amendment. He moved for leave four days after the second motion and twelve days before the trial-ready date. The interval is shorter than the delays in *Sherman* and *Hartis*. *See Sherman*, 532 F.3d at 717 (eight months after the movant became aware of the defense); *Hartis*, 694 F.3d at 949 (more than six months after the ruling prompting the amendment). But good cause turns on diligence in meeting the scheduling order's requirements, not the length of the delay. *Sherman*, 532 F.3d at 716–17. Measured against the May 1 amendment deadline, the trustee could have pleaded the claim before it passed. Measured against the summary judgment and trial-ready dates, he sought more time for summary judgment twice and said nothing about an

amendment until the case was nearly trial-ready. Either way, he was not diligent in pursuing the § 549 claim.

Denying the § 549 claim costs the estate little. Whether the credits reduce what Darin owes remains open under the turnover claim.[9] But no good cause supports the § 549 gift claim.

*The § 547 Gift Claim Is Futile*

The proposed preference claim under § 547 depends entirely on Darin's testimony. A required element of a preference is a transfer of an interest of the debtor in property, "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). On the note's terms, the credits are gratuitous. Only Darin's testimony supplies a debt. The first evidence of it came during the June 26, 2026, deposition. The trustee sought the deposition beginning in March 2026. The defendants' scheduling pushed it past the deadline, and Darin's incomplete document production delayed it further. Whether the twelve weeks between the deposition and the motion reflect diligence is a closer question measured against the amendment deadline. The court need not answer it, because the § 547 claim is futile.[10]

A proposed amendment is futile when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). An affirmative defense supports dismissal when the complaint itself establishes it. *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (applying statute of limitations defense).

Under § 547(b), the trustee may avoid a transfer made to an insider within one year before the petition on account of an antecedent debt, if the remaining elements are met. 11 U.S.C. § 547(b). But § 547(c)(9) bars avoidance, in a case filed by a debtor whose debts are not primarily consumer

---

[9] The note became property of the estate. If the gift clause was an unenforceable promise of future forgiveness, the debtors could not forgive any part of the note without court approval, and their promise did not bind the trustee. Any dispute over post-petition credits then concerns what Darin owes, the subject of the turnover claim already pleaded. If the clause was an enforceable term of the 2016 bargain, the estate took the note subject to it.

[10] Once good cause is lacking, a court need not reach futility. *Kmak*, 873 F.3d at 1035. The reverse also holds. Where an amendment is futile, the court need not decide diligence.

debts, when the aggregate value of all property constituting or affected by the transfer is less than a statutory floor. 11 U.S.C. § 547(c)(9). The floor adjusts every three years under 11 U.S.C. § 104. For cases commenced before April 1, 2025, but on or after April 1, 2022, it is $7,575. 87 Fed. Reg. 6625 (Feb. 4, 2022).[11]

The debtors' debts are not primarily consumer debts. The largest debt is Rabo's deficiency judgment on a $4,000,000 agricultural line of credit. The proposed amended complaint pleads gifts of $580 each month. Twelve fell within the year before the petition was filed (April 15, 2023, through March 15, 2024).[12] They total $6,960. Whether measured one at a time or together, the gifts fall below $7,575. The proposed complaint itself establishes the defense.[13]

The trustee's other claims against Darin do not change the calculation. Section 547(c)(9) measures "the aggregate amount of the transfers that are avoidable pursuant to § 547(b)." *Haley v. Barclays Bank Del. (In re Carter)*, 506 B.R. 83, 87 (Bankr. D. Ariz. 2014). Preferential transfers to one creditor are aggregated when they form part of a single transaction, that is, payments on the same debt, or transfers made under a common plan. *Schnittjer v. Pickens* (*In re Pickens)*, 2008 WL 63251, at *5 (Bankr. N.D. Iowa Jan. 3, 2008). The trustee's other claims against Darin arise under § 544(b) and the Nebraska Uniform Voidable Transactions Act, or, in the proposed amendment, under § 549. None is a preference claim, and the transfers they target involve different debts and, in some instances, a different transferor.[14] The trustee's § 547 claim is futile.

---

[11] The defendants cite a floor of $8,575. The 2025 adjustment producing the $8,575 figure governs only cases commenced on or after April 1, 2025. 90 Fed. Reg. 8941 (Feb. 4, 2025). This case was commenced on March 27, 2024. The difference does not change the result.

[12] The note is embraced by the pleadings. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

[13] The transferee bears the burden of proving a § 547(c) defense. 11 U.S.C. § 547(g); *Pickens*, 2008 WL 63251, at *5. The burden matters little where the plaintiff's own allegations establish the defense.

[14] The parties cite no Eighth Circuit authority on aggregation. *Carter* speaks of "the aggregate of all transfers challenged in a preference action," but it ties the measure to transfers "avoidable pursuant to § 547(b)." 506 B.R. at 87. The post-petition credits do not count. They share a source with the pre-petition credits, but a preference must precede the petition, and *Pickens* aggregates preferential transfers only. 2008 WL

*Facts Regarding the Proposed Fourth Cause of Action Were Known*

The expanded fourth cause of action rests on nothing new. The $10,400 and $6,674.72 transfers came from the Joysprings account, the account whose statements supplied the original complaint's allegations about the $674.72 monthly transfers. The petition date was known when the complaint was filed. The defendants explained the monthly payments as vehicle-use payments in the April 2026 report. Darin's testimony about the pickup told the trustee nothing the defendants had not already disclosed. And by April 2026, the trustee knew the debtors were banking through an account in the name of Diamond Z Farms, LLC. These are legal variations on claims already pleaded. *Kmak*, 873 F.3d at 1034. No good cause supports adding them.

*Causes of Action Need No Clarification*

The proposed second cause of action seeks recovery of the $100,000 from Darin and Rachel as immediate transferees under § 550(a)(2). The original complaint already states that claim. It alleges Darin and Rachel "are the immediate transferees of the first transferee of the Excess Proceeds," and its prayer seeks recovery under § 550(a).[15] The trustee describes the change as making "clear" the relief he seeks. The change adds the judgment avoiding the transfer of the Excess Proceeds to Joysprings. The judgment is part of the record. Nothing needs clarifying.

Likewise, the request to move the monthly transfers out of the second cause of action and into an expanded fourth cause of action is denied. The monthly transfer allegations remain as originally pleaded in the second cause of action.

*Abandoned Causes of Action May Be Removed*

The proposed amended complaint drops causes of action. No party argues against dropping them. A plaintiff dropping fewer than all claims after an answer may proceed by amendment under Rule 15(a) or by dismissal under Rule 41(a)(2); the differences are "more technical than substantial." *Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 873 (8th Cir. 1977) (citing *Johnston v.*

---

63251, at *2, *5. Nor do credits before March 27, 2023, count. Section 547(b)(4)(B) reaches insider transfers within one year before the petition, so earlier credits are not "avoidable pursuant to § 547(b)."

[15] The defendants already assert the defenses available to a subsequent transferee and the single-satisfaction rule.

*Cartwright*, 355 F.2d 32, 39 (8th Cir. 1966)). Either way, the plaintiff needs a stipulation, the adverse party's written consent, or a court order. *Id*. The motion asks for the order.

In ruling on a request for voluntary dismissal, the court considers whether the party has offered a proper explanation, whether dismissal would waste judicial time and effort, and whether dismissal would prejudice the defendants. *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013). The trustee offers no explanation. But dismissal saves judicial time, and no defendant claims prejudice from losing exposure to claims.

The court treats this part of the motion as a request for dismissal under Rule 41(a)(2). If every claim against a defendant is dropped, the defendant should be dropped. *See* Fed. R. Civ. P. 21 (the court "may at any time, on just terms, add or drop a party"); Fed. R. Bankr. P. 7021. Upon the filing of the amended complaint, any party against whom no claim is stated is dismissed.

## Conclusion

The trustee has not shown good cause for adding claims after the deadline in the scheduling order.[16] Darin's testimony does not make the § 549 claim more viable, and the proposed preference claim is futile. The trustee may, however, narrow his complaint by dropping claims he has abandoned.

The amended complaint must retain any cause of action upon which judgment has been entered. Within the body, it may delete the parties, facts, and any allegations that solely support an abandoned cause of action or abandoned claim within a cause of action. It must remove from the caption any parties who are dismissed. The existing causes of action cannot be moved or renumbered. Every cause of action and paragraph in the original complaint must be accounted for. Each omitted cause of action should appear as "[Number] Cause of Action – Dismissed," and each omitted paragraph as "[Number]. Omitted," so the remaining paragraphs keep their original numbers. The amended complaint may not alter the allegations supporting any remaining cause of action, including any cause of action for which judgment has been entered.

---

[16] Because the trustee has not shown diligence on the claims requiring it, the court does not reach prejudice. *Sherman*, 532 F.3d at 717.

Because the amended complaint adds no new claim, no defendant must answer it. Each defendant's existing answer stands as its answer to the amended complaint.

A separate order will be entered.

Dated: October 16, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge